May it please the Court, I am Steve Harris on behalf of the Appellant Water District. This Court in Sioux Center in 2000 decided or affirmed a judgment by the District Court in which the District Court determined water sales beyond the city limits in that case were a violation of 1926B. This Court affirmed that decision. That seemed to indicate that the Court's view was is that protective boundaries associated with section 1926B extend beyond the annexed city limits of a municipality. Ten years later in the case of Laclede 3 v. Lebanon, the Court viewed in some detail, in fact considerable detail, regarding the interpretation of 1926B on a number of issues and looked at how Judge Fenner had extended, or at least Judge Fenner's view in looking at all of the other available case authority, viewed the protection of 1926B to extend beyond annexation and even beyond the grant of some type of franchise. And this is echoed both in Sioux Center, which this Court referred to it as protection from competition. And then again in Laclede 3 v. Lebanon, the Court uses the term insulated from competition twice and uses the term protection from competition again two times. The Court decided the Laclede 3 case based on the assumption that indeed protection under 1926B extends beyond annexed boundaries and even extends beyond the grant of a franchise. And I think that still should be the determination here. The District Court has looked at it very narrowly and said, I'm going to interpret this 1926B statute and I'm going to inject the word annexed into the word boundaries in the language of the statute. Now, the District Court didn't spend any additional time on the issue of, it says, municipalities and other public bodies. I would point out that other public bodies is a myriad of complexity throughout the United States. For example, in Oklahoma, most municipalities use a public trust to sell water outside their annexed boundaries. These public trusts or public entities or other public bodies, they have the legal right to provide water service without any geographic limitation. They don't acquire their authority relative to the right to sell water in any particular jurisdiction. They don't acquire that authority by annexation. So if we stick the word annexation into 1926B and apply that to the word boundaries associated with municipalities and other public bodies, most other public bodies do not gain their right to sell water by annexation. They gain it by a variety of other means. And even, indeed, in the state of Missouri, how does a city acquire its legal right to provide water service outside of its boundaries, in other words, its water service boundary? It relies upon Section 91.050, which remarkably extends the power of a municipality to sell water from border to border within the state of Missouri. So given this word annexation, and should that limit the scope of 1926B, I submit that annexation by itself doesn't do anything. For the district court to say, well, I'm going to limit the effect of this statute, and I'm only going to protect you from annexation or grant a franchise, focusing on annexation, annexation does nothing. It doesn't limit the power of a water district in Missouri, and no other state that I can think of, is that the water district sits there, municipalities periodically annex over or overlap the boundaries of the water district, and virtually every jurisdiction that I'm aware of, that does not limit and it does not curtail the power of the district to continue to provide service. It was this court that made the comment that it is where service is initially provided, where water service is initially provided, that is the starting point of encroachment. That's when a 1926B violation occurs. Annexation has no impact, doesn't limit, doesn't curtail. It's water service, and that's in line with this court's decision in Laclede 3, where it says, again, the district is insulated from competition and protection from competition. That's the whole purpose of the statute. As a result, this narrowing, limiting it to annexation, makes no sense. Because the provision of water then just commenced the accrual of the statute of limitations and hasn't the statute of limitations therefore run? It would not for this reason. Annexation by itself, the city passes an ordinance. Is there any injury in fact at that moment in time relative to the commencement of a cause of action? Under Spokio v. Robbins, the Supreme Court held that even in the context of a violation of a statute, you have to have an injury in fact, otherwise the clock doesn't start ticking,  Well, but for the water service district, isn't the fact that they've encroached into your geographic territory a sufficient harm? Well, encroachment in the sense of competitive water sales, yes. And so doesn't the statute of limitations accrue? Didn't it accrue here in 1971 on some of it, in 1994 on the rest? Indeed. The statute of limitations begins marching forward from competitive water sales. Then the issue is, and that's the backstop argument by opposing counsel or by the city in this case, is that, hey, you don't have a claim anymore because the statute of limitations has expired. There's a very good continuing violation analysis in the Sioux Center case. And that says, hey, if you have the same bad actor, namely the city, the same victim, the same injury, loss of net revenue from water sales, that's a continuing violation. Is it, or is it just an extension of the original harm, that all you've got is ongoing harm arising out of a single violation? That the provision of water itself, that is, laying the pipes in there, hooking them up to houses, and letting the water go into the houses, that that's when the harm has established and that all we've got going on is just continuing effect. Well, that would be to suggest that, okay, you've got an initial sale of water on day one to a house. Does the water sale the next day cause additional new harm? Indeed, it does. But for the cruel standpoint, is it a new tort or a new breach of contract, whatever it is? I think each encroaching sale becomes its own 1926B, and you can't separate that. I mean, it continues in effect, and not all customers within a subdivision are connected all at the same time. Some subdivisions never get connected for decades because the developer went broke. We saw that in 2008. A lot of water districts ran water lines out, suddenly the real estate market collapsed, they had no customers repay their debt, it was a bad deal. But nevertheless, you've got each customer within a subdivision. If we start breaking this down in that level of detail, you've got sale number one to house number one, sale number 100 to house number 100, and 1,000, and then what happens when the first house sells is idle, consumes no water for six months, a year, doesn't sell for two years. If somebody else moves in and starts buying water, does that then renew the statute again? I think we avoid all that complexity by simply pointing out that these additional sales of water that progress into the future are indeed a continuing violation, and I think that was the essence of the analysis used by the district court in the Sioux Center case, later affirmed by this court. But doesn't the city of Lebanon case stand for the proposition, first in time, first in right? If the city's been providing water for 30 years, you can't then come in and in essence kick the city out? The Laclede III case stood for the proposition that if the city starts selling water before this water district has any federal debt, then the court concluded that it is the initial providing of water service that infringes, but the continuation of those sales is not, but the court made that analysis only in the context that when the city starts selling water and sells it, let's say, five, ten years or a day, this court held that if there's no 1926B protection upon the initiation of service by the city, and that water district later becomes indebted under 1926B, this court disagreed with the Tenth Circuit and said once you have the customer lawfully and legally, you get to keep that customer forever. That was the holding in this court. I think a clarification of that would be is that if the initial sale of water is in violation of 1926B, then the city could not, if it's violating it, say, well, okay, you know, slap my hands for the initial supply of water, but I can continue to sell water? No, that was not the holding of this court. It only limited its application to circumstances in which the city commences water before 1926B protection attaches. There was no debt. In other circumstances in which the first sale is a violation, a continuation of that would be a continuing violation extending the statute of limitations with each subsequent water sale. Let me ask you a question. Under Missouri law, can a rural water district extend within city limits? If it's already within its boundaries. Now, Missouri law is very complex on that as to when a municipality annexes over laps. No, I'm talking about you have a city, you have city limits, city boundaries, a rural water district is set up. Can you extend the rural water district into existing city boundaries? I'm not talking about annexation, but can you extend it into existing city boundaries? Not to my knowledge, because that would be extending water service beyond the boundaries of the water district. In Missouri, the farthest extent of a water district's power is that it can initiate service inside its boundaries, and I suppose provide service to a house that's immediately outside those boundaries. But that's the absolute stretch on a water district's authority to provide water sales. The difficulty arises when the municipality begins to overlap and annex within district. That's the typical example. But here we have the remarkable circumstance that the city, just like what happened in Sioux Center, runs its water lines into water district territory, doesn't annex, and starts selling water while that water district is indebted under 1926B. Let me eat up a little bit more of my time briefly. If the district court's decision were to be upheld and that protection is limited to annexation, that would be basically open season on water district territory. It would allow, just as what has happened here, municipalities are looking to skim the cream. This is not a case about a house here and a house over there and a mile distance between the two. This city is targeting densely populated areas, dense subdivisions, because that's the bread, that's the profit, that's the net revenue that cities really want. You're not going to see examples where a city runs a mile of pipe out to pick up service for a single house. They don't do that. It's because those customers are high expense, low revenue, and they're likely to lose money. That's why water districts provide service, typically in rural areas, but to limit the protection to annexation would render virtually all of water district territory, not just in Missouri and within the Eighth Circuit and perhaps beyond, it would limit the protection to nowhere. It would be open season again on the water district territory. Negative consequences, well, this court expressed concern as to what would happen if a municipality provides service legally without violating 1926B, and a water district comes along and gets federally indebted and wants to grab that territory back. Well, the court said, no, we're not going to allow that to happen. Once the city has it legally, they get to keep it forever. Now we have the exact reverse situation. Water district borrows money, millions to build a water tower, puts pipes in the ground, pump stations, water treatment plant, all with the idea that they're going to serve within their territory, and lo and behold, after all that money spent and all those facilities are in the ground, suddenly the city goes, oh, no, we're going to serve all those customers, and you'll have to figure out on your own how you're going to pay back that debt. I think the true concerns of this court in Laclede III have reappeared in the context of this case in reverse, is that the municipality, water districts are going to operate in the I'll say 46 seconds, Your Honor. Thank you. Very good. Thank you. May it please the court. Good morning, Your Honor. I'm Amy Davenport with my colleague, Alex Barrett, here on behalf of City Utilities of Springfield, Missouri, and for short, I'll refer to our client as the city or CU. This case really involves the offensive use of the district, the water district, of Section 1926 to reach in and take customers that have been served by the city for several decades. The district is doing this despite the fact that the loans that it had at the time the water district, the water service was initially provided, the loans have expired, and it's doing so despite the fact that the city's rate payers have paid for the construction, the continued operation, and maintenance, and the provision of drinking water service. The district's application of 1926 is incorrect, and it is incompatible with this court's holding in the Laclede case, and also the various texts of the statute. We ask you to- Why isn't Sioux Center case dispositive in this? As I understand it, the district court said protection only extends to city boundaries, and I think Sioux Center is just not consistent with that holding. Sioux Center involved a set of facts where, first off, the district sued within the statute of limitations of the incursion. So here we have an alleged incursion that occurred 50 years ago in Sioux City. It was five years that the conversation was being had. Sioux City also did not involve a lengthy analysis. This court did not get into a lengthy analysis of any continuing violation doctrine as the appellant applies it to this case. I think it can be read in conjunction. It didn't address that issue. It can be read in conjunction with the Laclede case. But as I understand it, the only issue before us is that the district court put in the word, as the appellants say, municipal boundaries. And so the district court said, you're only limited to, you can't annex property, as I read what the district court said. And you may have a perfectly good argument on the continuing violation, and you may have an argument on statute of limitations, and latches, and a whole laundry list of equitable considerations. But the district court didn't decide any of those. Your Honor, the district court decided, made its order based on two things. First, Judge Booe rightfully concluded that the public water supply district had waived its arguments. It made the arguments it's making before you today too late. And Judge Booe determined that those arguments were made for the very first time in its motion to alter and amend the judgment. His determination in that regard should be reviewed by you for an abuse of discretion. And Judge Booe was in the best position to make that determination, and he did. So the order in part was made based on the fact that the district had waived their arguments. He did go on to address the merits of what the district is arguing before you today, and that is the annexation issue. What we have here today is a municipal corporation. City Utilities is a municipal corporation under the statute, and the way municipal corporations define their boundaries is through annexation. There's no made up water service territory boundary annexation that occurs. It's through annexation. And so several courts from other districts, as the appellant has cited, have focused a lot on annexation, even though it is not written into the statute. It's simply the way municipal corporations define their boundary. And Judge Booe correctly concluded that that applies here to the City Utilities. I want to talk a little bit about waiver. As I understood what Judge Booe was saying, he basically says that the arguments about private enfranchisement and annexation were raised too late. He said that under 59E, that wasn't appropriate, and that they had been waived. But I think an argument can be made, and perhaps a strong argument, that really what we're just talking about there are nuances. Because they did allege that 1926 had been violated, and aren't the enumerated provisions encompassed within the general allegation? Your Honor, if you go back and read the briefing below, the summary judgment briefing below, appellant's argument was entirely different than what it is saying today. It is saying today that City Utilities... Well, what they're saying, this whole territory is ours forever, right? No matter what happens. Right. And then they come back and say, well, whatever the annexation and enfranchisement are encompassed in that, aren't those merely nuances of why this whole territory is ours and how it can be violated? Or do you think that really it had to be all fleshed out in the very first brief? I do think the text of the statute is what we need to start with here. And that level of statutory construction and those arguments should have been made in the brief below. And the appellant had every opportunity to do so when we raised that issue that was footnoted by this court in Laclede, that we raised that issue in our argument, that the statute could be read to just limit the curtailment to those two enumerated circumstances. We believe that this court should affirm Judge Boo on the waiver ruling that he was in the best position. He even states that in his ruling that appellant had three separate memorandum, filed three separate memoranda in support of its motion for summary judgment and never once argued that the text of 1926 refers to a municipal corporation's water service territory. If we get to the merits and uphold what the district court did here, if I understand Mr. Harris's argument, at least in part, is that it would effectively undermine the protections of 1926 in that any city could reach out into any rural district and, without annexation, provide service and that undermines the whole purpose of 1926. What's your response to that? The purpose of 1926, even under these facts, was still CERC. The purpose is to protect the security of the federal loan as well as to encourage rural water service. In this case, the city provided necessary and needed water service to the rural area back in the early 70s and in the early 90s. Since the district did not have that customer base, it was not losing revenues, any revenues that were relied upon by its lender at the time. Also, just practically speaking, the loophole that Appellant is arguing, we have not seen it occur. This case is the first one in the city's scenario that has occurred in 50 and 30 years. In my experience, municipalities don't have an incentive to go pick this kind of a fight with their neighboring political subdivision for financial and other political reasons. I don't believe it'll cause the consequence that the district is arguing. You could do what ... If we affirm the district court, just follow what Judge Grunder said, the Appellant says, you could skim the cream. If there's a new subdivision going up right outside the city limits that's densely populated, you could say, we're going to take that, right, if we affirm the district court? If you affirm the district court, we've briefed several bases for you to affirm the district court. We, chiefly among those is your holding in Laclede. No, I'm asking, if we've affirmed the district court, you could skim the cream, if you wanted to, of densely populated subdivisions that are right outside your city limits. Your Honor, if you adopt the basis that Appellant is putting forward, that is a possible scenario. We are asking you to look at the briefs and adopt your holding, your rationale under Laclede, which this court emphasized that there's an important timing element to the statute. Appellant sort of skips over that and jumps into the details of annexation and all these other things without addressing whether or not it meets a fundamental component of the statute as to allow protection under 1926. That is the phrase, during the term of such loan indicates that the scope of 1926 protection lasts as long as the loan is outstanding. The loans in this case, at the time the subdivisions were served, 1970s and 1990, have expired or were paid off. What the Appellant does now, is attempting to do now, is 50 and 30 years later, is reach back and claim the level of protection based on those old loans that no longer exist and extract these customers despite any evidence in the record that they attempted to serve them or that service was available to serve them. And that is a misuse of, entirely inconsistent with the purpose of the statute and with this court's holding in Laclede. And that's what we ask you to affirm Judge Booze ruling on, is under the principles of Laclede. Unless the court has any further questions, I'd like to conclude my remarks. Thank you very much. Thank you. Your Honor, in 44 seconds, the district is not making use, offensive use of 1926B. The Lehax case only applies to where a district is trying to use 1926B beyond its geographical boundaries. Here the fight is within the water district's boundaries. In terms of the term boundaries, I think Seuss-Enter is probably the best example of where boundaries, are not just annexed boundaries. In that case, it involved the so-called two-mile rule in Iowa where the city has special powers beyond its annexed boundaries and it deals directly with water service. So boundaries is a blurry term and not confined to annexed boundaries. And lastly, in terms of out of time, I would urge the court to look at our appendix 2738, 2741-3, and 2731. My arguments today are identical to the ones I made to the district court. Thank you, Your Honor. Thank you. Counsel, we appreciate your appearance today and your arguments. The case is submitted and we'll issue an opinion in due course.